IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BLAZEK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JEFFREY J. BLAZEK, APPELLANT.

Filed May 30, 2017.    No. A-16-612.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and Yohance Christie for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

BISHOP, Judge.

Jeffrey J. Blazek pled no contest to one count of burglary pursuant to Neb. Rev. Stat. § 28-507 (Reissue 2008), and the district court for Lancaster County sentenced him to 2 to 4 years' imprisonment. Blazek argues that his sentence is excessive and that his counsel was ineffective. For the following reasons, we affirm.

BACKGROUND

On January 16, 2015, the State filed a complaint in the county court for Lancaster County charging Blazek with burglary, pursuant to § 28-507. The complaint alleged that on or about January 16, Blazek "did willfully, maliciously, and forcibly break and enter any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value" at Orscheln Farm & Home in Lincoln, Nebraska. At the time of the offense, burglary was a Class III felony. § 28-507(2). (We note that this was prior to August 30, 2015, the effective

- 1 -

date of 2015 Neb. Laws, L.B. 605, which changed the classification of certain crimes and made certain amendments to Nebraska's sentencing laws.)

In a journal entry and order filed on April 28, 2015, the county court noted that Blazek waived his right to a preliminary hearing, and ordered that he be bound over to the district court.

On May 7, 2015, the State filed an information in the district court for Lancaster County charging Blazek with burglary, a Class III felony, pursuant to § 28-507.

In March 2016, pursuant to a plea agreement, Blazek pled no contest to the burglary charge in the information in exchange for the State's dismissal of two pending Class IV felony charges (one for theft by deception, and one for theft by unlawful taking) in unrelated cases, and the State's agreement to not file any charges for a new citation that Blazek had recently received for theft of electricity. According to the factual basis provided by the State,

On January 16th, 2015, at approximately 3:05 a.m., officers of the Lincoln Police Department were dispatched to Orscheln's at . . . Cornhusker Highway on an alarm. Dispatch further advised officers that the alarm was due to motion in the receiving area. Officers . . . checked the business for signs of forced entry and at that time weren't able to find any.

A manager showed up at approximately 3:33 hours, and did allow the officers inside. Upon searching, they located Mr. Blazek in the rear of the business, near the receiving area. When asked about being in the store, he claimed he had been locked inside after falling asleep in the bathroom. Mr. Blazek was observed to be holding a Coast brand head flashlight.

He was taken into custody and at that time the officers heard what sounded to be like some kind of Walkie Talkie or radio coming from Mr. Blazek. A search of Mr. Blazek located an iPhone that had been loaded with the police scanner app and was tuned to the Lincoln Police, Lancaster County Dispatch channel. It appeared Mr. Blazek was using this headlamp and iPhone to help facilitate a burglary.

Upon further investigation, the officers did find an area of forced entry. It appeared a metal post had been used to pry open an overhead door from the outside. Staged next to this overhead door were three pair of boots, all size 11. Mr. Blazek was found to be wearing boots that were also size 11. The boots that were lined up valued at $344.97. Those events occurred in Lancaster County, Nebraska.

The district court accepted Blazek's no contest plea to the burglary and later sentenced him to 2 to 4 years' imprisonment, with 55 days' credit for time served. Blazek now appeals.

## ASSIGNMENTS OF ERROR

Restated, Blazek assigns as error that (1) the district court imposed an excessive sentence, and (2) he received ineffective assistance of counsel.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Loding*, 296 Neb. 670, ___ N.W.2d ___ (2017). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only questions of law: Are the undisputed facts contained within the record sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance? *Id.*

ANALYSIS

*Excessive Sentence.*

Blazek asserts that the district court imposed an excessive sentence and did not give proper weight to the relevant sentencing factors.

Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

Blazek was 41 years old at the time of sentencing. He was single and had no dependents. Blazek completed the 12th grade and had been employed at a glass company for four months. The presentence investigation report (PSI) indicates that he was fired from a previous job at a tile company for "theft"; he was caught loading company materials into his vehicle and was seen exploring areas (e.g. "store rooms") in which he did not work.

As an adult, Blazek has been convicted of making a false statement to police, theft by lost/misdelivered item, attempted burglary (two counts in same case), stealing money or goods, theft by shoplifting (twice), DUI, disturbing the peace, trespassing, and numerous traffic violations. He was put on probation in 1998 for DUI and apparently completed that probation term in 1999. He was also placed on probation in 2009 for the two attempted burglaries, but had his probation revoked; he was then sentenced to prison in 2011, was paroled in 2012, and his parole expired in 2013. Regarding his current conviction, in January 2015, Blazek broke into an Orscheln Farm & Home store and was in the process of stealing goods when officers arrived. Following the current offense, he was arrested for theft by deception in July 2015, and theft by unlawful taking--third or subsequent offense--in August; both of these separately docketed cases were dismissed as part of the plea agreement.

During the PSI, Blazek reported using alcohol, marijuana, and cocaine in the past. However, his drug of choice was methamphetamine, which he first used at age 28. He stopped using methamphetamine at age 34, but resumed using after his father's death in 2013. Blazek reported using methamphetamine daily until August 2015. Following his arrest in the current case, Blazek stated he participated in a substance abuse evaluation and subsequently entered an intensive outpatient substance abuse treatment program; a discharge report in the PSI shows that he attended intensive outpatient treatment from November 16 to December 30, 2015. He "stepped down" to outpatient treatment and at the time of his PSI was "currently attending on Mondays with individual sessions as needed." Information in the PSI reveals that Blazek also participated in substance abuse treatment from November 2008 to April 2009, and estimates he stayed clean and

sober about two years. The PSI also notes that both of Blazek's parents had abused alcohol in the past and participated in substance abuse programs. Blazek told the probation officer that he was under the influence of methamphetamine at the time of the current offense, but denied burglarizing the business in order to support his habit. He believed the burglary "was due to boredom as well as the thrill and excitement of it."

As part of the PSI for his current conviction, the probation officer conducted a level of service/case management index. Blazek was assessed as "high risk" in the following criminogenic risk factors for recidivism: criminal history, companions, alcohol/drug problem, and antisocial pattern. The probation officer did not make a sentencing recommendation.

At the sentencing hearing, Blazek's counsel argued that Blazek had a drug addiction, had proactively sought treatment prior to the sentencing hearing, and should be sentenced to probation. Blazek himself addressed the court saying,

> I'm aware of my addiction problem, and I've managed my life around it. Like [my counsel] said, I've been attending AA, I voluntarily went to IOP [intensive outpatient treatment] and completed it. And I'm doing aftercare and the 101 sessions. I'm in the MADD Dad Program, and as well, I'm doing my AA meetings and NA meetings weekly. In the steps, you know, in the whole AA, I'm halfway through it. I'm on the sixth step and I'm just about ready to graduate that and go onto the seventh.

The district court said it took into consideration all of Blazek's and his counsel's comments, and all of the information in the PSI. The court said, "I can't ignore the nature of this offense and all of the surrounding facts and circumstances. . . . And I can't ignore your prior criminal history, which is significant to say the least. You've been to prison before." The court found that imprisonment was "necessary for the protection of the public because the risk is substantial that, during any period of probation, [Blazek] would engage in additional criminal conduct and because a lesser sentence would depreciate the seriousness of [Blazek's] crime and promote disrespect for the law." In addressing Blazek, the court said:

> Sir, you are on the right path here, it appears, and you need to continue to do that. . . . I hope you take advantage of programs available to you while you're incarcerated. And if you're on parole, I hope you take advantage of programs available to you on parole to stay sober. You know you need to, if you don't, I fear you'll get in more trouble, and nobody wants to see that happen.

The district court sentenced Blazek to 2 to 4 years' imprisonment, with 55 days' credit for time served. At the time of Blazek's offense (which occurred before L.B. 605), a Class III felony was punishable by 1 to 20 years' imprisonment, a $25,000 fine, or both fine and imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014). Blazek's sentence is in the lower range of the permissible sentencing range. Additionally, in exchange for his plea, Blazek had other charges dismissed or not even filed. Having considered the relevant factors in this case, we find that Blazek's sentence is not excessive or an abuse of discretion and is therefore affirmed. See *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013) (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court); *State v. Nevels*, 235 Neb. 39, 453

N.W.2d 579 (1990) (it is minimum portion of indeterminate sentence which measures severity); *State v. Meehan*, 7 Neb. App. 639, 585 N.W.2d 459 (1998) (sentencing court in noncapital cases may consider defendant's nonadjudicated misconduct in determining appropriate sentence).

*Effectiveness of Counsel.*

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Loding*, 296 Neb. 670, ___ N.W.2d ___ (2017). The determining factor is whether the record is sufficient to adequately review the question. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Sellers*, 279 Neb. 220, 777 N.W.2d 779 (2010). To show prejudice when the alleged ineffective assistance relates to the entry of a plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have entered the plea and would have insisted on going to trial. *State v. Fester*, 287 Neb. 40, 840 N.W.2d 543 (2013). The two prongs of this test, deficient performance and prejudice, may be addressed in either order. *Id.*

Blazek contends that he received ineffective assistance of counsel in that trial counsel (a) failed to submit Blazek's drug court application in a timely manner and (b) failed to seek relief in the proper venue, i.e., the drug court instead of the district court.

There is some indication in the record about Blazek's attempts to apply to the drug court program before the March 2016 plea hearing. At a hearing in the district court on December 21, 2015, Blazek's counsel said:

Judge, I set this matter for a hearing to ask the court to potentially resolve an issue about the defendant potentially getting into Drug Court. I didn't file any sort of formal pleading, but I believe that [the State] understood a little bit about what I was trying to do today.

Essentially, what we've got is a situation that on January 16th, 2015, a burglary was committed in Lancaster County. On February 11th, 2015 [actually January 16], Blazek was formally charged in Lancaster County with the felony of burglary. Subsequently after that, on July 13th, 2015, [Blazek] was charged with theft by deception and on February 7th of 2015 [sic], [Blazek] was charged with theft by unlawful taking.

[Blazek] subsequently instructed me to enter or apply to get him into Drug Court. There is a Drug Court rule that essentially says that they must apply to get into Drug Court within 100 days of being charged with the initial felony. [Blazek] told me about, you know, a drug problem or the idea that he might have a drug problem, after the second charge, the theft by deception charge in July of 2015, or at least within 100 days of [sic] date and time.

I subsequently filed an application, at his request, and it is now being considered for the charge, theft by deception and the theft by unlawful taking. Those two charges are being considered for Drug Court. The issue is the burglary that was committed on January 16th of 2015. . . . [Blazek] is essentially asking me to present an argument to this court, some sort of equitable or legal argument why the 100-day deadline shouldn't apply to this case.

Blazek's counsel said: "I didn't know that he had a drug problem before [July 2015]. Had I known that he had a drug problem before that, I may have applied [to Drug Court]." The State noted that counsel entered his appearance on February 11, 2015, and "That's when the 100 days kicks in. You have 100 days to apply to Drug Court after your attorney enters their appearance. [And] that expired in like May of 2015." In response to defense counsel's request, the district court stated, "Well, I don't believe it's up to this court to determine who's eligible for Drug Court. I believe it's the Drug Court and the Drug Court judge, and I am not the Drug Court judge." The district court continued the proceedings to allow Blazek to apply for drug court. A week later, on December 29, 2015, Blazek once again appeared before the district court. Blazek's counsel informed the court that an application had been made to the drug court. The proceedings were once again continued to allow time for Blazek's application to be resolved.

No mention was made of Blazek's drug court application at the plea hearing in March 2016. But at the sentencing hearing in May, Blazek's counsel informed the district court that "Blazek applied for Drug Court . . . And it was only because his application wasn't timely that Mr. Blazek probably wasn't in Drug Court. Had he been in Drug Court, he would have pled to a felony, and he probably would be halfway on his way to completing Drug Court." Counsel asked the court to consider that in imposing sentence. The record does not contain Blazek's application to drug court or any specific evidence as to his contacts with the drug court regarding his application.

Although there was discussion at the December 2015 hearing that there is a 100-day filing deadline for applications to the Lancaster County Drug Court, it was unclear when that 100-day clock begins. Furthermore, other than counsels' statements to the court, there is nothing in the record to show that the Lancaster County Drug Court has a 100-day filing deadline, or when that clock begins to run. Any Lancaster County Drug Court rules or guidelines setting forth a specific filing deadline for applications were not offered into evidence and do not otherwise appear in our record. Furthermore, there is nothing in the Nebraska statutes, Nebraska Supreme Court Rules, Uniform District Court Rules for Practice and Procedure, or the District Court Rules for the Third District (Lancaster County) that sets forth a specific filing deadline for drug court applications. See Neb. Rev. Stat. §§ 24-1301 and 24-1302 (Reissue 2008); Neb. Ct. R. §§ 6-1201 to 6-1210 (Problem Solving Courts); Neb. Ct. R. §§ 6-1501 to 6-1525 (rev. 2015) (Uniform District Court Rules); Rules of Dist. Ct. of Third Jud. Dist. 3-1 to 3-17 (rev. 2016).

Even assuming that there was a 100-day deadline that expired no later than May 22, 2015 (100 days after Blazek's counsel entered his appearance on February 11), there was no evidence as to when counsel learned of Blazek's drug addiction. Counsel's statement to the district court that he did not learn of the drug problem until July, was made at a nonevidentiary hearing. Blazek could certainly challenge the timing of counsel's knowledge during an evidentiary hearing on the matter. Accordingly, the record before us is insufficient to determine whether counsel failed to timely file an application to drug court.

As to Blazek's venue argument, it is true that the district court informed counsel at the hearing on December 21, 2015, that any questions regarding eligibility for drug court needed to be addressed with the drug court. However, the district court continued the proceedings to allow Blazek to apply for drug court. A week later, on December 29, 2015, Blazek once again appeared before the district court and Blazek's counsel informed the court that an application had been made

to the drug court. Other than counsel's statements, there is no evidence in the record before us that an application, or a request to file such out-of-time, was made to the drug court. Accordingly, the record before us is insufficient to determine whether counsel failed to timely file an application to the drug court in the proper venue.

In its brief, the State argues that Blazek cannot establish prejudice from his trial counsel's handling of his drug court application. The State contends: "Blazek cannot establish that but for his counsel's performance on this issue he would have insisted on going to trial. In fact, had Blazek been admitted to drug court, he would have necessarily pleaded guilty as part of the Drug Court program." Brief for appellee at 10.

As stated in *State v. Shambley*, 281 Neb. 317, 319, 795 N.W.2d 884, 888 (2011):

> The *drug court program is a postplea* or postadjudicatory *intensive supervision drug and alcohol treatment program* for eligible offenders. The purpose of the program is to reduce offender recidivism by fostering a comprehensive and coordinated court response composed of early intervention, appropriate treatment, intensive supervision, and consistent judicial oversight. A drug court program *participant pleads guilty and agrees to the terms and conditions of the program in exchange for the possibility of avoiding sentencing and, oftentimes, being allowed to withdraw the plea upon successful completion of the program.* If the participant is terminated from the program or withdraws before successful completion, then the conviction stands and the case is transferred back to the district court for sentencing.

(Emphasis supplied.)

The State also cites us to *State v. Crawford*, 291 Neb. 362, 865 N.W.2d 360 (2015) (postconviction case) to support its contention that Blazek cannot establish prejudice from his trial counsel's handling of the Drug Court application. See, also, *State v. Crawford*, No. A-11-645, 2012 WL 399888 (Neb. App. Feb. 7, 2012) (direct appeal case). In *Crawford*, Crawford pled guilty to possession of methamphetamine, in exchange for the dismissal of two separate cases and a sentencing recommendation. At the plea hearing, he specifically stated that he would be applying to drug court and that he understood there was no guarantee that he would be admitted to drug court, that the case would continue if he did not get into drug court, and, again, that a habitual criminal violation was "in play" and that there was no guarantee as to drug court. After his plea, Crawford timely applied to drug court, but it was determined that he was ineligible for the program; his motion to reconsider was denied.

In his direct appeal, Crawford appealed his plea for possession of methamphetamine, with a habitual criminal enhancement. In part, Crawford alleged that he was denied the right to effective assistance of counsel when his attorney failed to determine that Crawford was not eligible for the drug court program and advised him to enter into a plea agreement in which he would be subject to a habitual criminal enhancement if he was not accepted into the drug court program. On direct appeal, this court determined that the record did not reflect whether Crawford was eligible for drug court. But even if Crawford clearly was not eligible for drug court, he knew that there was a possibility he would not be admitted to the program, and his application to drug court was not a part of the State's plea agreement. We found that nothing in the record persuaded us that a decision

to reject the plea bargain would have been rational under the circumstances, and that Crawford failed to show that he received ineffective assistance of counsel. We further noted that Crawford did not move to withdraw his plea after he learned he was ineligible for drug court.

In his postconviction action, Crawford asserted in part that his appellate counsel provided ineffective assistance in failing to assign error to trial counsel's failure to move to withdraw Crawford's plea after Crawford learned he would not be eligible for drug court. The Nebraska Supreme Court said:

> With regard to the claim relating to withdrawal of the plea, the postconviction court stated that it was apparent on the record that Crawford knew before entering his plea that there was a possibility that he would not be admitted into drug court and that Crawford confirmed to the trial court that he understood admission into drug court was not part of the plea agreement. The court further stated that the record showed Crawford was aware of the potential sentence if he was found to be a habitual criminal. The court found that trial counsel had obtained a favorable plea agreement for Crawford.
>
> . . . The district court determined that trial counsel obtained a favorable plea agreement for Crawford, and the court therefore effectively found that Crawford had not shown that without counsel's alleged ineffectiveness, he would not have accepted the plea and instead would have insisted on going to trial. These determinations are supported by the record, and we agree that Crawford has not shown a reasonable probability that he would have insisted on going to trial; instead, he generally argues that he could have obtained a better plea deal if he had been allowed to withdraw his plea and not that he would have insisted on going to trial.

*State v. Crawford*, 291 Neb. at 374-75, 865 N.W.2d at 369.

The State in the present case contends that "the exploration as to drug court eligibility was concluded before the present plea deal was reached," that "Blazek was under no illusion that he was eligible for drug court when he voluntarily pled no contest pursuant to the plea deal," and that "[k]nowing that he had been excluded from drug court, Blazek also did not elect to go to trial." Brief for appellee at 10. Despite the State's contentions, the record before us does not show that at the time of his plea the exploration as to drug court eligibility was concluded and that at the time of his plea Blazek knew he had been excluded from drug court. The record reflects that an application was apparently submitted to Drug Court in December 2015, more than 2 months prior to the plea hearing; and, as stated previously, there is a question as to whether the application was timely filed. No further mention was made about drug court until sentencing in May 2016. Therefore, the record before us is insufficient to conclude that the exploration as to drug court eligibility was concluded and that at the time of his plea Blazek knew he had been excluded from drug court. Thus, the record currently before us presents a different set of facts than appeared in *Crawford*.

The record in the instant case does show that trial counsel obtained a favorable plea agreement for Blazek. And it is does not seem that Blazek has shown that without counsel's alleged ineffectiveness, he would not have accepted the plea and instead would have insisted on going to trial; especially considering that drug court would still have required a guilty plea and because

Blazek did in fact plead guilty in district court. But even though Blazek would have been required to plead guilty in drug court, the ramifications of his guilty plea would have been different. A successful completion of drug court results in avoiding sentencing and, oftentimes, being allowed to withdraw the plea upon successful completion of the program; the same outcome does not occur in a plea in a regular district court case. In *Crawford*, Crawford was found to be ineligible for the drug court program after a timely application. However, if Blazek's application was untimely, he was denied the opportunity to get into drug court and obtain a better outcome. And Blazek should be given the opportunity to prove that any untimely drug court application by his counsel resulted in prejudice, e.g., that he was otherwise eligible for drug court and would have been accepted into drug court, and that counsel's failure to timely apply denied him the opportunity to avoid sentencing or withdraw his plea should he successfully complete the program. See, e.g., *Ex parte Wolf*, 296 S.W.3d 160, 170 (Tex. App. 2009) (in habeas corpus action, defense counsel's performance found deficient because he failed to apply for pretrial diversion, request a Class C special expense, or advise Wolf of these options, either of which would have enabled Wolf to have his record expunged if successfully completed; in some instances habeas relief has been based on ineffective assistance of counsel in a "guilty" plea case without requiring proof that the applicant would have insisted on going to trial; "[w]hen the applicant alleges prejudice based on the loss of an opportunity to plead 'guilty' on a different basis than he did, it makes sense not to require proof that the applicant would have insisted on going to trial.").

We note that following the current offense of burglary in January 2015, Blazek was arrested for theft by deception in July, and theft by unlawful taking--third or subsequent offense--in August; both of these later offenses were separately docketed cases. The July and August crimes could have caused Blazek to become ineligible for drug court on the burglary, in which case Blazek would suffer no prejudice by any untimely filing of the drug court application by his counsel. However, because the rules and/or guidelines regarding eligibility for the Lancaster County Drug Court do not appear in our record, the record is insufficient to make a determination as to prejudice.

Accordingly, we find that the record before us is insufficient to determine whether counsel failed to timely file an application to drug court in the proper venue, and if so, whether Blazek was prejudiced.

CONCLUSION

For the reasons stated above, we affirm Blazek's sentence. However, we find that the record is insufficient to adequately review the effectiveness of his trial counsel.

AFFIRMED.