IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. TAFOYA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

KEENAN Z. TAFOYA, APPELLANT.

Filed July 18, 2017.    No. A-17-056.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Korey L. Reiman, of Reiman Law Firm, for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

BISHOP, Judge.

Keenan Z. Tafoya pled no contest to one count of terroristic threats, a Class IIIA felony. The district court for Lancaster County sentenced him to 3 years' imprisonment, and 18 months' post-release supervision. Tafoya argues that the district court would not allow him to withdraw his plea, and imposed an excessive sentence. For the following reasons, we affirm.

BACKGROUND

On March 7, 2016, the State filed an information charging Tafoya with two counts of terroristic threats, each a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-311.01 (Reissue 2016). We note that Tafoya's offenses occurred after August 30, 2015, the effective date of 2015 Neb. Laws, L.B. 605, which changed the classification of certain crimes and made certain amendments to Nebraska's sentencing laws.

On July 13, 2016, Tafoya pled "no contest" to one count of terroristic threats (victim was Jeremiah R. Rosecrans). Pursuant to a plea agreement, the State dismissed the other count of

- 1 -

terroristic threats (alleged victim was Earl Johnson). According to the factual basis provided by the State,

> On October 20th of 2015, Lincoln police officers were contacted and sent to investigate a disturbance at the area of Northwest 8th and West Dawes Street in Lincoln, Lancaster County, Nebraska. . . . [W]hen they got there, they talked to Mr. Rosecrans, who said that he had been working on a house [in the area] along with two other individuals, and Mr. Rosecrans observed a light-colored minivan with a missing driver's headlight pull up into . . . the house next door.
>
> Mr. Rosecrans said he saw two individuals get out of the van and go to the back door of [the house next door]. Mr. Rosecrans went around the house . . . he observed another individual come running down the alley southbound followed by the passenger of the van that he had seen exit and go to the back door of the neighboring house. Mr. Rosecrans reports that as the first male came running around the corner, he was yelling to call 911.
>
> Mr. Rosecrans did that, and he started to walk toward the vehicle of one of the people he was working with . . . the male who was chasing him was identified by the person who was being chased as . . . Tafoya. Mr. Rosecrans said that Mr. Tafoya then confronted Mr. Rosecrans, telling him to hang up the phone. Mr. Rosecrans was already on the phone with 911 and did not hang up the phone.
>
> He reports at that point Mr. Tafoya punched him twice in the left eye and once in the left chest. . . . Mr. Tafoya lifted up his shirt and exposed what appeared to be and what Mr. Rosecrans believed to be the butt of a handgun tucked into Mr. Tafoya's waistband. Mr. Tafoya then said, "Hang up the phone, or I'm going to shoot your ass."
>
> . . . Tafoya then . . . left in the minivan that had pulled up to the neighboring house. He described the individual. The physical description was given to the police. . . . Rosecrans said that the actions of Mr. Tafoya did cause him terror.

The district court accepted Tafoya's no contest plea to one count of terroristic threats, and the case was set for sentencing on September 22, 2016.

On September 22, 2016, Tafoya made an oral motion to withdraw his plea. A hearing was held on that motion on September 22, October 13, and December 16. At the end of the evidence, the district court denied the motion and proceeded to sentencing. The court sentenced Tafoya to 3 years' imprisonment, and 18 months' post-release supervision; he received 18 days' credit for time served. Tafoya now appeals.

ASSIGNMENTS OF ERROR

Tafoya assigns that district court erred when it (1) denied his motion to withdraw plea, and (2) imposed an excessive sentence.

STANDARD OF REVIEW

A trial court has discretion to allow defendants to withdraw their guilty or no contest pleas before sentencing. *State v. Carr*, 294 Neb. 185, 881 N.W.2d 192 (2016). An appellate court will

not disturb the trial court's ruling on a presentencing motion to withdraw a guilty or no contest plea absent an abuse of discretion. *Id.* A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Baxter*, 295 Neb. 496, 888 N.W.2d 726 (2017).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016).

ANALYSIS

*Motion to Withdraw Plea.*

Tafoya asserts that the district court's denial of his motion to withdraw plea was an abuse of discretion because, based on his testimony, Tafoya "was coerced at worse and confused at best regarding his right to a trial." Brief for appellant at 8. He was also "confused about the process of discovery, namely depositions and interviewing witnesses." *Id.* Further, "he was under the impression that prior acts of his brother would be used to punish him for this offense." *Id.*

To support a finding that a defendant freely, intelligently, voluntarily, and understandingly entered a guilty plea, a court must inform a defendant about (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. *State v. Carr, supra.* The record must also show a factual basis for the plea and that the defendant knew the range of penalties for the crime charged. *Id.* Tafoya was advised as to all of the above, and a factual basis for the plea was given at the July 2016 plea hearing.

The right to withdraw a plea previously entered is not absolute. *State v. Carr, supra.* When a defendant moves to withdraw his or her plea before sentencing, a court, in its discretion, may sustain the motion for any fair and just reason, provided that such withdrawal would not substantially prejudice the prosecution. *Id.* See, also, *State v. Carlson*, 260 Neb. 815, 619 N.W.2d 832 (2000) (reaffirming standard is *may* allow defendant to withdraw plea, not *should* allow defendant to withdraw plea). The defendant has the burden to show the grounds for withdrawal by clear and convincing evidence. *Carr, supra.* Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *State v. Payne-McCoy*, 284 Neb. 302, 818 N.W.2d 608 (2012).

At the September 22, 2016, hearing on Tafoya's motion to withdraw his plea, Tafoya testified that he felt "pressured" into entering his plea because,

> I know nothing about the court system or how it works, and I was looking to my public defender for advice, and he said, If I was you, I would accept this due to the fact that -- excuse my language, that you're [the judge] the B-word and you will give me the max. Due to my relations with my family and who my brother is and my family, that you would give me the highest that you can give me, like the max penalty to the law.
>
> So he said that my best course of action would be to plead to a felony[.]

At that point, Tafoya's public defender requested leave of the Court to withdraw from the case and asked the court to appoint separate counsel to represent Tafoya in this matter. The court allowed

the public defender to withdraw and appointed new counsel for Tafoya. The matter was continued to October 13.

When the hearing resumed on October 13, 2016, with new counsel present, Tafoya continued his testimony regarding his request to withdraw his plea. He claimed that at a meeting in June, Tafoya told his previous counsel (public defender) that he wanted to go to trial. There was some discussion about interviewing witnesses, but counsel said that it would not be helpful "[be]cause of my family." During that same June meeting, Tafoya told counsel that he wanted witnesses deposed, but counsel said he could not do depositions until the jury was selected. Tafoya claimed to have minimal experience in the criminal justice system and said he had never had a trial.

Tafoya said he learned about the plea offer at his public defender's office "around July 9th," a few days prior to entering his plea on July 13, 2016. Counsel told Tafoya he had "ten minutes to decide; otherwise, there would be no more plea offers at all." Tafoya and his counsel discussed Tafoya's brother. His brother had previously "beat" criminal charges in front of the judge hearing Tafoya's case, and counsel said the judge would "take it out" on Tafoya. Counsel told Tafoya to take the plea because if he went to trial, he would get sentenced "to the max." Tafoya told counsel he would accept the plea, and then counsel "called [him] in for court a few days later," at which time he entered his plea. Sometime after he entered his plea, Tafoya talked to his brother who told Tafoya that he should have gone to trial instead of entering a plea.

On cross-examination, Tafoya acknowledged that at the plea hearing the court asked him questions, and that he answered truthfully. (At the plea hearing, Tafoya was informed of the charge and possible penalty, which Tafoya said he understood. And after conferring with counsel, Tafoya affirmed that he was freely and voluntarily entering the plea and that no one had made any threat, direct or indirect, used any force, or held out any promise of any kind, other than the plea agreement, to induce him to enter his plea.) But Tafoya had "second thoughts" about the plea. And he changed his mind about the plea after talking to his brother.

Tafoya's fiancé testified that she sat in on Tafoya's meeting with his public defender a few days before he entered his no contest plea. She confirmed Tafoya's account of the discussions regarding depositions, interviewing of witnesses, and Tafoya's brother. She also confirmed that Tafoya only had 10 to 15 minutes at that meeting to decide whether to accept the plea. On cross-examination, she acknowledged that because the plea hearing did not occur until a few days after the meeting with counsel, Tafoya had more time to determine whether he was still going to enter the plea.

The hearing on Tafoya's motion to withdraw his plea continued on December 16, 2016, with the public defender's testimony. The public defender testified that he previously represented Tafoya in this case and was his attorney at the time the plea was entered on July 13, 2016. During his representation of Tafoya, but prior to July 13, the public defender and Tafoya discussed "settling the case" and depositions. During discussions with Tafoya, the public defender laid out the two options, plea or trial, and told Tafoya he would help him with whichever choice he made; he denied "push[ing]" Tafoya one way or another. The public defender denied telling Tafoya that he could not do depositions until the jury was selected; denied telling Tafoya that the judge did not like Tafoya's brother and that as a result Tafoya would "get a maximum sentence"; and denied

telling Tafoya that he only had 10 minutes to consider a plea offer and that he could not change his mind. Immediately prior to the plea hearing on July 13, it was the public defender's understanding that Tafoya still wished to accept the plea offer. The public defender believed that Tafoya understood his rights and the consequences of waiving his rights. He also believed that Tafoya entered his plea freely, voluntarily, knowingly, and intelligently.

In overruling Tafoya's motion to withdraw plea, the district court said that based upon the evidence presented, it could not find any fair or just reason for allowing Tafoya to withdraw his no contest plea. The court found Tafoya entered the plea after being fully advised of all of his constitutional rights and being asked if any promises had been made to him or any threats made against him. Having reviewed the record, we conclude the district court did not abuse its discretion in finding that Tafoya failed to prove by clear and convincing evidence that he had a "fair and just" reason to withdraw his plea. Accordingly, the district court's denial of Tafoya's motion to withdraw plea was not an abuse of discretion.

*Excessive Sentence.*

Tafoya asserts that the district court imposed an excessive sentence when it gave him "the maximum" sentence for the offense. Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

Tafoya was 27 years old at the time of sentencing. He was engaged to be married and had three children (5 years of age and younger) with three other women; he had "Skype" contact with the oldest child, no contact with the middle child, and had been the primary caretaker of his youngest child for the past 6 months. Tafoya quit high school in the 12th grade before completing all of the necessary credits for graduation, but said he would like to obtain his GED. He had been working as a warehouse laborer via a staffing agency.

As an adult, Tafoya was involved with the Diversion Program for stealing money or goods at 18 years old. He has been fined for traffic offenses, possessing marijuana, shoplifting, and failure to appear. He has never been placed on adult probation or sentenced to jail or prison. Tafoya's current conviction is for terroristic threats. As part of the PSI for his current conviction, the probation officer conducted a level of service/case management index. Tafoya was assessed in the "high" risk range to reoffend.

At the sentencing hearing, Tafoya's counsel noted that this was Tafoya's first felony, and he did not have a history of violence or serious offenses. Counsel stated that while there was some discussion about a gun, Tafoya did not have a gun and never claimed to have a gun. Tafoya has accepted responsibility for his actions "in his way," he just "felt this was more like an assault" rather than terroristic in nature. Tafoya's youngest daughter (11 months old) was living with him, and he was her primary caretaker.

The State responded that Tafoya claims to accept responsibility,

but apparently he's still saying he didn't have a gun, and according to the witnesses -- and that would be not only Mr. Rosecrans, but also Mr. Johnson -- he was chasing Mr. Johnson

at the beginning of this yelling, "I'm going to pop, I'm going to pop, get down, get down," which Mr. Johnson said, to him, that's -- he's going to shoot me, and he was running with his hand held in a manner that made Mr. Johnson believe that Mr. Tafoya had a gun.

And then when Mr. Rosecrans got involved and called the police . . . Tafoya came up . . . told him to hang up the phone, punched him twice in the left eye and once in the chest. . . .

. . . Tafoya yelled at Mr. Rosecrans, sorry, "Hang up the phone, or I'm going to shoot your ass." Then Mr. Rosecrans said that he saw Mr. Tafoya raise his shirt, and there was a butt of a gun in the waistband of his pants.

The State recognized that Tafoya's circumstances had changed, in that he was now caring for his infant daughter, but asked the court to consider the circumstances of this case and the seriousness of the offense in determining the sentence.

The district court said it read the PSI and considered all of the relevant sentencing factors. The court specifically stated that it believed both of the witnesses (contained in the police reports) that Tafoya had a firearm at the time of this offense. "The fact that he does not have that charge, frankly, just shows that he received a substantial benefit of a generous plea offer." The court found Tafoya was not an appropriate candidate for probation and that imprisonment was necessary for the protection of the public and because the risk is substantial that during any period of probation Tafoya would engage in additional criminal conduct. The court determined that a lesser sentence than imprisonment would depreciate the seriousness of Tafoya's crime and promote disrespect for the law. The district court sentenced Tafoya to 3 years' imprisonment, and 18 months' post-release supervision; he received 18 days' credit for time served.

Tafoya's offense (which occurred after L.B. 605) was a Class IIIA felony punishable by up to 3 years' imprisonment and 18 months' post-release supervision, a $10,000 fine, or both; if imprisonment is imposed, there is a minimum sentence of 9 months' post-release supervision. See Neb. Rev. Stat. § 28-105 (Reissue 2016). Tafoya's sentence was within the permissible sentencing range. Additionally, in exchange for his plea, Tafoya had another Class IIIA felony count dismissed. Having considered the relevant factors in this case, we find that Tafoya's sentence was not excessive or an abuse of discretion and his sentence is therefore affirmed. See, *State v. Dixon, supra* (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court); *State v. Meehan*, 7 Neb. App. 639, 585 N.W.2d 459 (1998) (sentencing court in noncapital cases may consider defendant's nonadjudicated misconduct in determining appropriate sentence).

## CONCLUSION

For the reasons set forth above, we affirm the decision of the district court.

AFFIRMED.