IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. KNOX

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CHARLES R. KNOX, APPELLANT.

Filed January 14, 2020.    No. A-19-266.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge.
Affirmed.

Joe Nigro, Lancaster County Public Defender, and Amy J. Peters for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Charles R. Knox pled no contest to one count of terroristic threats, a Class IIIA felony. The Lancaster County District Court sentenced him to 365 days' imprisonment, followed by 18 months of postrelease supervision. Knox claims the district court imposed an excessive sentence and his counsel was ineffective. We affirm.

## II. BACKGROUND

On June 21, 2018, the State filed an information charging Knox with one count of terroristic threats, a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-311.01 (Reissue 2016).

On October 22, 2018, the State filed an amended information charging Knox with one count of terroristic threats, a Class IIIA felony, pursuant to § 28-311.01, and one count of use of a firearm to commit a felony, a Class IC felony, pursuant to Neb. Rev. Stat. § 28-1205(1)(c) (Reissue

- 1 -

2016). The record from the sentencing hearing on February 26, 2019, notes that the amended information was withdrawn by the State at a hearing on November 2, 2018.

At a hearing on December 19, 2018, Knox agreed to plead "no contest" to the terroristic threats charge in the original information, in exchange for the State agreeing to not pursue any other charges arising out of the investigation, including the potential use of a firearm to commit a felony. According to the factual basis provided by the State,

> Officer Backer of the Lincoln Police Department reports that on April 8, 2018, . . . officers were waived down near 48th and Huntington Avenue by the [named] victim . . . who reported that he went to his friend's residence, [near 30th and O Street], at 3:30 [p.m.] He said he left his car running and had music playing fairly loudly from his vehicle when he went up to his friend's door as he did not plan on being there long.

> The victim said that while he was ringing the doorbell at his friend's residence, . . . Knox[] came out of [a nearby residence] and started yelling at him about the music being too loud. [The victim] said [Knox] yelled at him to, "'Shut the fuck up,'" and "'If you do not listen to me, man, I'm going to smoke you.'" . . . [The victim] said that he told [Knox] he [would] be leaving soon and tried to ignore [Knox].

> The victim said [Knox] then went inside of his residence and came back out holding a long gun behind him. [The victim] said [Knox] told him quote, "Are you going to listen to me, man, or what?" end quote while holding the gun behind him. After the statement was made, the victim said [Knox] then displayed the gun to the victim by holding the gun in front of his body and said quote, "You better listen to me." end quote. [The victim] said the gun was not directly pointed at [him] but [he] could clearly see this weapon [and provided a description of the weapon]. . . . [The victim] said it caused him to be placed in fear so that he then left the area. . . .

> A search warrant [was] obtained . . . the next day . . . for [the residence where Knox was at the time of the incident the previous day] . . . [and] a black, loaded rifle with an attached silver bayonet was found inside the garage along with other various ammunition. This rifle matched the description given by the victim.

> After [Knox] waived his **Miranda** warnings, he admitted he had confronted [the victim] about the music. . . . [A]nd admitted he was holding a rifle.

> Those events occurred in Lancaster County, Nebraska.

(Bold in original.) The district court accepted Knox's no contest plea to the terroristic threats charge, and found him guilty of the same. The case was set for sentencing. The district court further informed Knox that his trial counsel would tell him what he would need to do "regarding getting together with the probation office to have the presentence investigation report prepared." The court added, "They will make an appointment for you. They will tell you that if you miss that appointment it will not be rescheduled. That's also my position so make sure you make that appointment, okay?" Knox responded, "Okay."

After a hearing on February 26, 2019, the district court sentenced Knox to 365 days' imprisonment, with 1 day of credit for time served, followed by 18 months of postrelease

supervision. The sentence was to be served consecutively to any other sentence previously imposed on Knox.

Knox appeals.

## III. ASSIGNMENTS OF ERROR

Knox assigns that (1) the district court imposed an excessive sentence and (2) his counsel was ineffective.

In *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019), the Nebraska Supreme Court clarified that the allegations of counsel's deficient performance must be specifically alleged in the assignments of error section of the appellant's brief. Knox's claim that counsel was not effective is not a specific allegation. However, because Knox's brief was filed shortly after the *Mrza* opinion was released, we will examine the argument section of his brief for the necessary specificity.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

Knox claims his sentence is excessive. He was convicted of one count of terroristic threats, a Class IIIA felony, pursuant to § 28-311.01. A Class IIIA felony is punishable by a maximum of 3 years' imprisonment and 18 months' postrelease supervision, or a $10,000 fine, or both; there is no minimum term of imprisonment, but there is a minimum of 9 months' postrelease supervision if imprisonment is imposed. See Neb. Rev. Stat. § 28-105(1) (Reissue 2016). Knox was sentenced to 365 days' imprisonment, with 1 day of credit for time served, followed by 18 months of postrelease supervision. His sentence is within the statutory range.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Leahy, supra.* In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation

of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Knox was 43 years old at the time of sentencing. He did not appear for his scheduled presentence investigation (PSI) interview. The probation officer's report indicated that the PSI was completed without a personal interview and that assessments were not conducted. A copy of a PSI completed in 2008 for a different criminal case in Lancaster County (for driving under the influence, 3d offense) was attached. Additionally, several attachments were subsequently added to the current presentence investigation report (PSR) at or near the time of sentencing; attachments included Knox's completed probation information worksheet and letters from Knox's trial counsel, mother, and girlfriend/neighbor. According to the information orally provided on the record and/or contained in the PSR, Knox had completed some college and was employed.

Knox's criminal history includes disturbing the peace in 1994 and 2013, both amended from assault (fines); possession of marijuana in 1995 (fine); theft by receiving $200/less in 1996 (fine); theft by receiving $200 to $500 in 1996 (fine); "DUS" in 1998 (fine); "DUS" in 1998 (3 months' probation and fine); Operate Vehicle While Suspended in 1998, amended from DUS, 2d Offense (fine and 1 year of probation); DUS, Subsequent Offense, in 1999 (fine and 1 year of probation); disturbing the peace in 1998, 1999, 2004 (fines); attempted possession of controlled substance in 2000, amended from possession of controlled substance (20 days' jail); DUI, 1st Offense, in 2007 (fine, 7 days' jail, license suspended 6 months); DUI, Aggravated, in 2007 (fine, 7 days' jail, license suspended 1 year); DUI, 3d Offense, in 2008 (36 months' probation, house arrest, fine, license revoked 2 years, probation and license revocation extended); and numerous traffic violations (fines). Additionally, he had assault charges in 2000 and 2005, both of which were dismissed. His current conviction was for terroristic threats.

As noted above, Knox did not show up for his scheduled PSI interview in the current case. However, for his 2008 conviction for driving under the influence, 3d offense, the probation officer conducted a level of service/case management index, and at that time Knox was assessed as an overall "medium risk to reoffend."

At the sentencing hearing, Knox's counsel asked the district court to consider placing Knox on probation notwithstanding the fact that he failed to appear for his PSI interview or, alternatively, that the court consider imposing a very minimal, straight sentence involving a minimal term of county jail. In support of his request, counsel asked the court to note that Knox's criminal history, although containing a number of entries, showed no prior felony convictions for assaultive behavior, weapons, or threatening type behavior (although there were assault charges, they were either dismissed or reduced). Counsel contended the facts of the case showed "really a verbal argument that got out of hand," there were no physical injuries or physical violence, and that Knox picked up a gun that had fallen by the doorframe while engaged in an argument with the victim, but he did not point the gun at the victim or threaten him with the gun directly.

Knox addressed the district court stating, "I know I should have handled the situation differently, obviously. I did find myself in the snow storm helping the same people that are in question here . . . and that I'm a good person and I want to help people." "[I]t is a situation that I believe got out of hand." "[B]ut all I can do is learn from this and hopefully, it will never happen again. And I'm sorry."

The State submitted without argument.

The district court stated, "My opinion is if you cannot keep that appointment with the probation office to have the [PSI] report prepared, the fact that you missed that appointment indicates to me that you are not a likely candidate for probation." "Additionally, the facts of the case indicate that there was a firearm involved. Whether it fell or however it was you came into possession of it, you came into possession of it during this argument. It concerned the victim enough that he chased down a police officer to report it." "A threat with a gun is serious," "it raises it to a whole different level." After considering the relevant sentencing factors, the court found that imprisonment was necessary for the protection of the public and because a lesser sentence would depreciate the seriousness of the crime and promote disrespect for the law. The court sentenced Knox to 365 days' imprisonment, with 1 day of credit for time served, followed by 18 months of postrelease supervision. The sentence was to be consecutive to any other sentence Knox may be serving.

In his brief, Knox contends the district court failed to "adequately consider the mitigating circumstances leading up to the offense [that the victim was disturbing Knox's peace and quiet]; [Knox's] history, character, and attitude indicating he is unlikely to commit another crime; the likelihood that [Knox] would respond affirmatively to probation treatment; and his willingness to enter a plea." Brief for appellant at 13. See Neb. Rev. Stat. § 29-2260(3) (Reissue 2016) (factors favoring withholding sentence of imprisonment).

Having considered the relevant factors in this case, we find that Knox's sentence was not excessive or an abuse of discretion and his sentence is therefore affirmed. See, *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018) (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court); *State v. Meehan*, 7 Neb. App. 639, 565 N.W.2d 459 (1998) (sentencing court has broad discretion in source and type of evidence it may use in determining kind and extent of punishment to be imposed within limits fixed by statute; sentencing court in noncapital cases may consider defendant's nonadjudicated misconduct in determining appropriate sentence).

### 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Knox claims his trial counsel was ineffective. His counsel for this direct appeal differs from his trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record in order to preserve such claim. *State v. Spang*, 302 Neb. 285, 923 N.W.2d 59 (2019). Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant has the burden to show that his or her counsel's performance was deficient and that this deficient performance actually

prejudiced the defendant's defense. *State v. Spang, supra*. In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id.*

In his brief, Knox states that his trial counsel (1) failed to communicate with him effectively throughout the duration of the case, (2) failed to prepare a defense leaving him with no other choice but to accept the State's plea offer, and (3) had a conflict of interest in that counsel had previously sued him for unpaid legal fees.

(a) Communication Prior to Plea

Knox argues that "he expressed to trial counsel from the very beginning of the case that he did not wish to enter a plea," but that counsel "failed to reasonably consult with [him] about the means by which his objectives could be accomplished and advise [him] about all the potential defenses he could have raised at trial"; to the extent counsel did communicate with him, "it was for the limited purpose of pressuring [him] to accept the plea." Brief for appellant at 20. This claim is refuted by the record. At the plea hearing the following colloquy was had:

THE COURT: Mr. Knox, have you discussed the plea proceedings we are conducting here today with [trial counsel]?

[KNOX]: Yes.

THE COURT: Did he explain to you the charge in the Information together with the rights we've been discussing?

[KNOX]: Yes.

THE COURT: Did [trial counsel] discuss with you all of the possible defenses to this charge you might have if you were to have a trial?

[KNOX]: Yes.

THE COURT: Are there any defenses you feel you may have or any facts about the case you feel might be helpful to your defense that you have not discussed with [trial counsel]?

(An off-the-record discussion was held between [trial counsel] and the defendant.)

[KNOX]: Yes.

THE COURT: Let me ask that again, then. Are there any defenses that you feel you may have or any facts about the case that you feel might be helpful to your defense that you have not discussed with [trial counsel]?

[KNOX]: No.

THE COURT: In other words, have you told him everything about this case you feel he needs to know to be able to represent you properly?

[KNOX]: Yes.

THE COURT: Are you satisfied with the job he's done as your attorney?

[KNOX]: Yes.

THE COURT: Do you think that he's a competent attorney and that he knows what he is doing?

[KNOX]: For the most part, yes.

THE COURT: Have you had enough time to talk to him about the case?

[KNOX]: Yes.

Knox further stated his desire to enter the plea and denied that anyone forced him to enter the plea. Because Knox's claim regarding communication with counsel prior to the plea and discussion of potential defenses is refuted by the record, it fails.

(b) Communication Prior to Sentencing

Knox further argues that after entering his plea, trial counsel failed to communicate with him through sentencing, "resulting in miscommunications regarding [his] predisposition investigation appointment, as well as a failure of trial counsel to submit all character letters as [Knox] intended at the time of sentencing." Brief for appellant at 20.

*(i) PSI Appointment*

At the sentencing hearing, trial counsel stated, "Your honor, obviously it is concerning that [Knox] did not keep his PSI appointment so I understand this Court's general rule that people who don't keep PSI appointments aren't likely to get probation and I understand this Court's position in that regard." Trial counsel asked the court to consider placing Knox on probation "notwithstanding the fact that he failed to appear for his PSI or, alternatively, that the Court consider imposing a very minimal, straight sentence involving a minimal term of county jail."

Despite Knox's trial counsel specifically referencing Knox's failure to keep his PSI appointment, when asked by the district court whether there was anything he wanted to tell the court before sentencing, Knox did not address his failure to appear at the PSI appointment. Rather, he stated he wished he would have handled the situation that lead to the charge differently. The district court reminded Knox that at the time of Knox's plea, the court advised him that an appointment would be made with the probation office and that if he missed that appointment it would not be rescheduled. The district court stated, "I advise all of those people who are not in custody of that and it is my position and always has been my position." The court added, "My opinion is if you cannot keep that appointment with the probation office to have the [PSI] report prepared, the fact that you missed that appointment indicates to me that you are not a likely candidate for probation."

In his brief, Knox claims that he was prejudiced with regard to the lack of communication regarding his PSI appointment, "as the district court clearly placed heavy emphasis on [Knox's] failure to attend this appointment in its sentencing decision." Brief for appellant at 21.

The record clearly shows that Knox was advised at the time of his plea that an appointment would be made with the probation office and that if he missed that appointment it would not be rescheduled. Further, at the time of sentencing, Knox's trial counsel specifically referenced Knox missing his PSI appointment, and when Knox was asked whether he had anything to tell the court before being sentenced, Knox never provided any explanation for why he missed his appointment.

Knox's vague assertion that there was a "lack of communication and response from trial counsel regarding his [PSI] appointment," brief for appellant at 21, is too vague to implicate ineffective assistance of trial counsel. Knox makes no claim that he was given an inaccurate appointment date, nor does he allege any explanation whatsoever regarding why he missed his appointment, much less any explanation that could be attributed to deficient conduct by his trial counsel. The record reveals that Knox was specifically advised by the district court that he would be meeting with the probation office regarding his PSI and the importance of keeping that appointment. Knox makes no specific allegation as to how any communication with his trial counsel, or lack thereof, adversely impacted his ability to keep that appointment. This claim of ineffective assistance of trial counsel fails for lack of specific allegations of trial counsel's conduct constituting deficient performance. See *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016) (claim not raised with sufficient particularity is not properly raised on direct appeal).

### *(ii) Character Letters*

At the sentencing hearing, the district court stated that it received two letters from named individuals and that they would be made part of the PSR; those two letters do appear in the PSR in our record. To the extent there were additional character letters Knox wanted submitted to the court, he does not specifically identify those letters in his brief. Accordingly, this allegation of deficient performance lacks the necessary specificity. See, generally, *State v. Blaha, supra* (finding assignment lacked merit when after utilizing defendant's arguments to expand his assignment of error, defendant still did not specifically state how counsel performed deficiently).

Nevertheless, we note that at the sentencing hearing, Knox stated that the district court should have received a character reference letter from a named individual who was his former employer; the district court stated it had not received that letter. Trial counsel stated he had "personally never received a character letter from that individual" and did not have a record of the letter Knox was referencing. Counsel cannot be deficient for failing to submit a letter he did not receive.

### (c) Conflict of Interest

Finally, Knox asserts that trial counsel proceeded to represent him in spite of a conflict of interest, namely that counsel's firm had previously sued Knox for unpaid legal fees in a prior case (he identified the case number); he claims the action for unpaid fees was still pending at the time counsel began representing him in the instant case. The record before us on direct appeal is insufficient to address any potential conflict of interest or waiver thereof in the instant case.

### VI. CONCLUSION

For the reasons stated above, we affirm Knox's sentence. In addition, we find that the record is insufficient to address Knox's claim that trial counsel had a conflict of interest. Otherwise, the remainder of Knox's claims regarding ineffective assistance of trial counsel fail.

AFFIRMED.