IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. JENNINGS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BRANDON L. JENNINGS, APPELLANT.

Filed December 8, 2020.    No. A-20-224.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Candice C. Wooster, of Brennan & Nielsen Law Offices, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, Chief Judge, and BISHOP and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Brandon L. Jennings pled no contest to five misdemeanors, and the Lancaster County District Court sentenced him to consecutive sentences of 365 days' imprisonment on each count. Jennings claims that the district court imposed excessive sentences and that he was denied his right to effective assistance of counsel. We affirm.

## II. BACKGROUND

On December 5, 2019, the State filed an information charging Jennings with three counts stemming from an incident that took place on September 29: count 1, "Domestic Assault, 3rd degree - prior," a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-323 (Reissue 2016); count 2, violation of a protection order, a Class I misdemeanor, pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2018); and count 3, child abuse, a Class I misdemeanor, pursuant to Neb. Rev. Stat. § 28-707 (Supp. 2019).

- 1 -

Pursuant to a plea agreement, the State filed an amended information on January 30, 2020, charging Jennings with five counts: count 1, third degree domestic assault, a Class I misdemeanor, pursuant to § 28-323; count 3, child abuse, a Class I misdemeanor, pursuant to § 28-707; count 4, attempted tampering with a witness or informant, a Class I misdemeanor, pursuant to Neb. Rev. Stat. §§ 28-201 (Reissue 2016) and 28-919 (Supp. 2019); and counts 2 and 5, violation of a protection order, each a Class I misdemeanor, pursuant to § 42-924. At a hearing that same day, further details of the plea agreement were set forth on the record. As part of the plea agreement, the State agreed to dismiss a separate criminal case charging Jennings with "felony tampering," a "Class 4 felony," and further agreed not to file any additional protection order violations or potential tampering charges from incidents that may have occurred between September 29, 2019, and January 30, 2020. Additionally, Jennings agreed to plead no contest to the five charges in the amended information in the current case and he agreed to admit or plead no contest to a petition in a separate juvenile court case.

Pursuant to the plea agreement, Jennings pled no contest to the five counts in the amended information in the current case. According to the factual basis provided by the State,

On September 29th, 2019, officers were dispatched to [a specific address] referencing a domestic disturbance. They made contact with . . . [M.S.]. She states that . . . Jennings is the . . . father of one of her children.

On that day they had an argument. Uh, he became upset; then began striking her in the head . . . with open and closed hands. During this argument . . . she was holding her 8-month-old minor child, RCS . . . .

At one point she was shoved by [Jennings] . . . against the wall causing both her head and RCS's head to strike the wall. She did have marks on her chest and a lump starting on her forehead. Uh, did cause pain consistent with what she was reporting, as well -- a minor laceration on her . . . right jaw.

[Jennings] was arrested that same day and has been in Lancaster County Jail since then. On January 7th, 2020, Investigator Deluby . . . with the Lincoln Police Department began to monitor . . . phone calls made by Mr. Jennings . . . to [M.S.'] phone number.

He identified one call in particular from October 11th, 2019 . . . where [Jennings] tells [M.S.] to put all this beside us -- uh -- if I were you I would try and contact somebody. He goes on to say, please tell me that you will help me out.

[M.S.] says, I'm not doing all that. Mr. Jennings then says, I'm going to have some people talk to you. Put your pride aside and help me. So you're going to leave me here for years. You have the power to help me out. You have to get a hold of the main people and tell them. Can you dumb down the situation and -- uh -- tell them -- uh -- essentially referring to the assault.

And he tells her that she has a big part in this now and that she needs to help him out. He wants her to tell people, let them know that all the shit is a big misunderstanding and that she should make it seem like she was just mad and saying these things out of anger.

. . . [D]oes feel like she was . . . being . . . persuaded or induced to change her testimony about what happened. In addition . . . there was a protection order in place at both the time of the . . . incidents in Counts 1, 2, and 3, as well as the . . . phone calls that were made . . . subject of Counts 4 and 5.

. . . .

. . . . And these events all occurred in Lancaster County, Nebraska.

The State also offered a certified copy of the protection order into evidence, and it was received without objection. The district court accepted Jennings' no contest pleas to the charges in the amended information and found him guilty of the same. The case was set for sentencing.

After a hearing on February 26, 2020, the district court sentenced Jennings to 365 days' imprisonment on each count, all sentences to be served consecutively. Jennings was given 150 days' credit for time served. The court stated that Jennings was not eligible for work release.

Jennings appeals.

## III. ASSIGNMENTS OF ERROR

Jennings assigns (1) the district court imposed excessive sentences and (2) he received ineffective assistance from trial counsel who (a) failed to file a motion to discover, (b) failed to review all jail calls that were part of the plea agreement and an aggravating factor at sentencing, (c) failed to identify which statements in the presentence investigation report (PSR) were taken out of context or missing the full statement made to the probation officer conducting the interview, (d) failed to offer the guardian ad litem report and court report/case plan which were referenced during sentencing and were utilized by counsel as mitigating factors, and (e) offered the victim's statement to the court for review prior to the sentencing hearing, inciting anger towards Jennings.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

Jennings was convicted of five Class I misdemeanors. A Class I misdemeanor is punishable by up to 1 year of imprisonment, a $1,000 fine, or both. See Neb. Rev. Stat. § 28-106 (Reissue 2016). Jennings was sentenced to 365 days' imprisonment on each count, all sentences to be served consecutively; his sentences were within the statutory range.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v.*

*Lierman, supra*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.* It is within the discretion of the trial court to impose consecutive rather than concurrent sentences for separate crimes. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017).

Jennings was 21 years old at the time of sentencing. According to the PSR, Jennings was single and had one child. He had completed high school, had attended some community college classes, and was employed prior to his arrest.

Jennings had a juvenile history of assaults and terroristic threats. His adult criminal history includes damage to property in 2016 for which he was sentenced to 7 days in jail; possession of marijuana twice in 2017 for which he was fined; assault causing bodily injury which was amended to "Disorderly Conduct - Fighting or Violent Behavior" in 2017 for which he was sentenced to 1 day in jail; and third degree domestic assault of a pregnant woman amended to third degree domestic assault in both 2018 and 2019 for which he was sentenced to concurrent terms of 1 year of probation. Both the 2018 and 2019 domestic assaults were of M.S., the victim in the current case. Jennings' current offenses were set forth previously.

The probation officer conducted a "Level of Service/Case Management Inventory." Jennings was assessed as a "very high risk to re-offend." He scored "very high" in the criminogenic risk factor domain for procriminal attitude/orientation. He scored "high" risk in the domains for criminal history, education/employment, leisure/recreation, companions, and antisocial pattern. He scored "low" risk in the domain for an alcohol/drug problem. On the Domestic Violence Offender Matrix, Jennings scored "in the high risk range due to information that [he] had used weapons or threats in the past with this victim." Jennings reported having been diagnosed as bipolar when he was a child. The probation officer noted that Jennings appeared to be taking little to no responsibility for the present offense and appeared to be "engaging in minimization or denial related to his involvement in the present offense."

At the sentencing hearing, Jennings' counsel argued that Jennings was young and had a "limited" criminal history. Counsel noted that Jennings was currently on probation in Douglas County, Nebraska, and "it's our understanding that . . . Douglas County will come get him . . . when he is done here," and then he will "likely be sentenced there, as well." Counsel stated that Jennings wanted the district court to know that some of his quotes in the PSR were "taken out of context a little bit," some of the communications "were lost in translation," and "lots of other things that he said . . . were just left out"; counsel did not elaborate as to which quotes he was referring. Counsel also noted that there was an ongoing juvenile court case and that Jennings will have to comply with that court's orders as well, "so there will be some . . . supervision and things that he will have to do . . . for that case going forward."

Trial counsel offered the "actual recording of . . . [M.S.'] statement . . . in this case when it happened," and counsel wanted "to take a moment to just note that domestics are complicated." Counsel continued by stating that "on the audio recording . . . one of the first things she says is, I don't want this to get back to my case worker," and she says three times that she picked him up from Omaha; it was not until later in the recording when "she goes on and says . . . he forced himself into the car." "Originally she talks about the argument starting in the car." "Apparently . . . she said that he left," "and then he came back . . . and then [the] incident happened." Counsel

argues that there are "some things that are . . . hard to understand and some inconsistencies." Counsel wanted the court to consider the totality of the circumstances and to consider the incident in its entirety. Counsel believed "there's a lot more to the story . . . than was . . . outlined in the police reports," and that was his reasoning for offering the audio recording of the interview.

In addressing defense counsel's comments about M.S.' statements, the State argued, "of course she tells law enforcement that she doesn't want this to get back to her case worker," because "[s]he's involved in a juvenile case and she realizes that the custody of her child was at risk at that point." The State noted that M.S. "is caught up in the wheel of domestic violence," "so that explains some of the inconsistent statements early on"; "She still had hope at that time that her child's father would be in her life."

Jennings' trial counsel read a letter from Jennings into the record wherein Jennings stated he had learned from this experience and was using it to better himself. Jennings also personally addressed the court stating, "I just want to move forward. Whatever happens, it's in God's will." Jennings apologized for his actions "because [he] should've prevented everything from happening when [he] had the opportunity to." He also stated, "I understand I did wrong, but I don't feel like I'm the monster I'm being made out to be, at the same time."

The State argued that Jennings had an assaultive history back when he was a juvenile, and "this wasn't just a one-time thing." The State noted that Jennings was previously convicted in 2018 of third degree domestic assault of M.S and received probation for 1 year; "[i]t was pled down from assault on a pregnant woman when [M.S.] was pregnant with their child." Additionally, in 2019 Jennings pled to "another count of third-degree domestic" of M.S., again pled to down from assault on a pregnant woman, and received a concurrent sentence of probation. And there were "other multiple assaults that were reported to the police with the same victim." The State argued that Jennings received the benefit of a plea bargain in the current case, noting that "between October 11th, 2019, and January 7, 2020[,] there were 345 calls to the victim from the jail," and "[207] of those were completed"; "throughout those calls he repeatedly made attempts to get the victim to change her story." Jennings also "reach[ed] out to third parties to try and get them to talk to [M.S.] and get them to . . . pass messages along to her." The State asked "for a maximum sentence period of incarceration, all counts to be consecutive to each other."

The district court stated that it had reviewed the PSR. The court addressed Jennings and said, "You have a record that, I suppose you could call minimal in some respects; but it is quite significant in others [pointing to his history of assaults and terroristic threats]." The court noted that Jennings was on probation when the current incidents happened. The court also noted that "[t]here has been a valid protection order in place since June 6th of 2019 that is still in place," and "[t]hat has meant absolutely nothing" to Jennings as evidenced "from all of those calls from the jail." The court stated that there "was no way" it could consider Jennings for probation based on the circumstances. The court found that imprisonment was necessary and sentenced Jennings as set forth previously.

Jennings contends that his sentences were an abuse of discretion because the district court did not "give proper weight and consideration to relevant sentencing factors." Brief for appellant at 8. Jennings argues that the court did not consider mitigating factors such as his mental health diagnoses and the fact that he entered a plea, saving the time and expense of a trial. He further

argues that the court failed to consider that a lesser sentence would be better suited to his rehabilitative needs.

Having considered the relevant factors in this case, we find that Jennings' sentences were not excessive or an abuse of discretion and his sentences are therefore affirmed. See, *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020) (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court); *State v. Meehan*, 7 Neb. App. 639, 585 N.W.2d 459 (1998) (sentencing court has broad discretion in source and type of evidence it may use in determining kind and extent of punishment to be imposed within limits fixed by statute; sentencing court in noncapital cases may consider defendant's nonadjudicated misconduct in determining appropriate sentence).

## 2. EFFECTIVENESS OF COUNSEL

Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

Jennings has different counsel on direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *Id.*

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019).

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Blaha, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id.* The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra*.

Thus, in reviewing Jennings' claims of ineffective assistance of counsel on direct appeal, we first consider whether the claim is raised with sufficient particularity for this court to make a determination of whether the claim can be decided upon the trial record, and if so, we must then consider whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. See *State v. Stelly, supra*

(appellate court required to consider whether defendant has adequately alleged claim of ineffective assistance, and if so, must then consider whether record on appeal is sufficient to conclusively determine deficiency or prejudice).

Jennings claims that his trial counsel failed to file a motion to discover; failed to review all jail calls that were part of the plea agreement and an aggravating factor at sentencing; failed to identify which statements in the PSR were taken out of context or missing the full statement made to the probation officer conducting the interview; failed to offer the guardian ad litem report and court report/case plan which were referenced during sentencing and were utilized by counsel as mitigating factors; and offered the victim's statement to the court for review prior to the sentencing hearing, inciting anger towards Jennings. As explained below, we conclude the record is sufficient to address all of Jennings' claims and further conclude that each claim fails.

### (a) Motion to Discover

Jennings argues that his trial counsel was ineffective when counsel failed to file a motion to discover in district court.

At a bond review hearing on January 3, 2020, Jennings requested that his case be set for the February jury term. The district court said it could add Jennings' case to the list for February, but asked if that meant he was not going to file for discovery. Trial counsel responded, "[A]t this time I do not intend to file any other motions. Uh, this case started . . . in county court . . . as a misdemeanor, so . . . we have information about the case."

Jennings now claims that prior discovery had been granted by the county court, but the district court "had not issued an order for the delivery of continued discovery, the issuance of exculpatory evidence, or that any evidence be provided to [his] Trial Counsel," therefore "[h]ad it ever been discovered that evidence was not provided to [him], Trial Counsel would not have a way to enforce a request for additional discovery in District Court." Brief for appellant at 17. Jennings specifically states that Officer Deluby did not begin to monitor his jail calls until January 7, 2020, which was during a time there was no order for discovery in place in the district court.

As noted by the State, Jennings did not make allegations about what evidence was not provided to him, or why such evidence would have resulted in him refusing the plea agreement. Because Jennings' claim regarding trial counsel's failure to file a discovery motion in district court is insufficiently stated, and further, is simply conclusory in nature, the claim fails. See, *State v. Stelly*, 304 Neb. at 63, 932 N.W.2d at 879 (defendant must allege deficient performance with sufficient particularity; "claim of ineffective assistance that is insufficiently stated is no different than a claim not stated at all"); *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014) (in context of direct appeal, like requirement in postconviction proceedings, mere conclusions of fact or law are not sufficient).

### (b) Review of Jail Calls

Jennings claims that his trial counsel was ineffective because counsel failed to review all jail calls that were part of the plea agreement and were an aggravating factor at sentencing. He argues, "One element of [his] plea agreement [was] that the State would not pursue charges for the alleged 345 phone calls from jail that [he] made to [M.S.] during the pendency of this case and while the Protection Order was still in effect," and that "[a]n attorney with ordinary skill and

training would have also reviewed the jail calls in order to appropriately respond to the prosecutor's information at sentencing regarding those calls." Brief for appellant at 19. Jennings states that the PSR only notes three jails calls, and no evidence was offered regarding the remaining 342 jail calls. And at sentencing, trial counsel commented, "I don't know . . . they did send me a disc. I don't know how many [calls] there are. But Mr. Jennings dis - disagrees with that." Jennings argues, "[i]t is unclear whether Trial Counsel even reviewed the calls, much less took the time to discuss them with [him]," and "[d]ue to a lack of knowledge of the content of those phone calls, Trial Counsel [was] not even able to respond to the accusations." Brief for appellant at 19. He further argued that "[t]here [was] no evidence whether [he] was apologetic, inquired about his child, or spent time trying to work on co-parenting with [M.S.]; "[t]he inference is that all 345 calls were negative, and although the protection order was in place at the time, the context of those calls could have been a mitigating factor utilized at sentencing." *Id*. at 19-20.

Jennings' claim that counsel was ineffective for failing to review all jail calls fails because, even if his counsel was somehow deficient by not reviewing all of the jail calls, Jennings would be unable to show prejudice. Regardless of the nature of the calls, there was a valid protection order in place prohibiting Jennings from contacting M.S.; nevertheless, Jennings contacted M.S. in violation of the protection order. The impact of those calls on sentencing was not based on whether the substance of the calls was positive or negative; rather, as stated by the district court, "There has been a valid protection order in place since June 6ᵗʰ of 2019 that is still in place," and "[t]hat has meant absolutely nothing" to Jennings as evidenced "from all of those calls from the jail." Even if trial counsel had listened to every call and shared some positive information that may have been contained in them, such shared information would not have impacted the trial court's decision in that regard since its focus was not on the substance of the calls themselves; rather, the court was troubled by the fact that Jennings repeatedly made calls in direct violation of a court order.

### (c) Statements in PSR

Jennings claims that his trial counsel was ineffective during the sentencing hearing because counsel failed to identify which statements in the PSR were taken out of context or missing the full statement made to the probation officer conducting the interview.

At the beginning of the sentencing hearing, the district court asked trial counsel if he was aware of any additions, corrections, or deletions that needed to be made to the PSR. Trial counsel noted an issue with the calculation of the sentencing credit and that another case had been dismissed pursuant to the plea agreement, and counsel also offered an audio recording. The court then asked Jennings if he had an opportunity to talk with his counsel about the PSR, and Jennings responded in the affirmative. The court also asked Jennings if he was aware of any additions, corrections or deletions that needed to be made to the PSR other than those mentioned by his trial counsel, and Jennings responded, "No."

Trial counsel then proceeded with his argument on sentencing. During his argument, counsel stated that Jennings wanted the district court to know that some of his quotes in the PSR were "taken out of context a little bit," some of the communications "were lost in translation," and "lots of other things that he said . . . were just left out"; counsel did not elaborate as to which quotes he was referring. Trial counsel stated that he (counsel) was not present for the presentence

interview and that these types of interviews are not recorded. But counsel said he "[did not] think it's unusual . . . for . . . someone when they participate in the [presentence interview] process to say, well, I also said this and I also said that or -- or what I was trying to say was X, Y, Z."

Jennings argues that trial counsel should have directed the court to the exact page numbers and statements in the PSR "to ensure that the District Court was made aware of what was actually said or meant by those statements" because without that additional information the court had "no idea" what part of the PSR was being referenced. Brief for appellant at 20-21. Additionally, at the sentencing hearing, trial counsel said he believed there was "a lot more to the story" than was outlined in the police reports, but again, counsel did not go on to explain what additional pieces there were to the story. *Id.* at 21. Jennings claims he received "a maximum sentence" because the court "was not aware of all the mitigating factors." *Id*.

As noted by the State, Jennings fails to explain with any particularity to this court which statements were taken out of context or what exactly trial counsel failed to state. And as we have previously noted, allegations of deficient performance must be stated with sufficient particularity to warrant appellate review. See *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019). Further, Jennings had the opportunity to address any necessary additions, corrections or deletions to the PSR, but said he was not aware of any. And even though trial counsel did not elaborate as to which of Jennings' interview statements were "taken out of context," "lost in translation," or "left out," Jennings had the opportunity to personally address the district court and could have explained which statements were taken out of context, but he did not do so. The same can be said about the missing parts of the "story" in the police reports; Jennings could have told his version of the story to the sentencing court, but did not do so. Because Jennings personally had the opportunity to clear up any issues in the PSR, he cannot show that he was prejudiced by his trial counsel's lack of specificity at the sentencing hearing. This claim of ineffective assistance of trial counsel fails.

### (d) Reports Utilized as Mitigating Factors

Jennings claims that his trial counsel was ineffective during the sentencing hearing because counsel failed to offer the guardian ad litem report and court report/case plan which were referenced during sentencing and were utilized by counsel as mitigating factors.

At the sentencing hearing, trial counsel addressed the toxicity of Jennings' relationship with M.S. He mentioned a December 2019 guardian ad litem report from the juvenile court case, and stated, "[O]ne of the things it says in there is that it is concerning that [M.S.] . . . continues to have contact with him and the phone calls," and it "goes on to say that they're concerned about -- emphasize that -- needed to tell the actual truth because her story has changed multiple times." The guardian ad litem report "goes on to say, I'm aware that Mr. Jennings has a lot of power to control [M.S.], but it is concerning the number of lies she has told to all the parties throughout the life of this case." Trial counsel also mentioned a December court report in the juvenile case that "talks about [M.S.'] [parenting time] . . . remain[ing] fully supervised due to the uncertainty of [her] interactions with . . . Jennings" and reports that M.S. was accepting phone calls from Jennings, who was incarcerated, and that "some of those calls have taken place during [M.S.'] parenting time."

Although assigned as error, Jennings did not specifically argue that trial counsel was ineffective for failing to offer the guardian ad litem and court report at sentencing. See *State v.*

*Denton*, 307 Neb. 400, 949 N.W.2d 344 (2020) (to be considered by appellate court, alleged error must be both specifically assigned and specifically argued in brief of party asserting error).

Instead, Jennings focuses his argument on trial counsel's statements at sentencing. Jennings argues that trial counsel "does not identify which information in this case [M.S.] allegedly was lying about or why it was important to present to the District Court evidence of [her] dishonesty." Brief of appellant at 22. Jennings claims that trial counsel "appears to attempt to erase blame from [Jennings] which prejudiced [him] at sentencing," because "[a] lack of responsibility is an extreme aggravating factor when it comes to sentencing." *Id*. Jennings does acknowledge that at the sentencing hearing trial counsel told the court not to construe his comments as Jennings not taking responsibility. But Jennings argues trial counsel's comments "are reflective" of Jennings and thus when counsel "attempt[ed] to shift blame to the victim," it reflect[ed] poorly on Jennings. *Id*.

Despite his argument to the contrary, we find that Jennings would not be able to show prejudice by trial counsel's use of statements from the guardian ad litem report and court report at sentencing. Jennings focuses his argument on his assertion that trial counsel's blame shifting reflected poorly on him. However, trial counsel specifically stated to the court that his comments were not meant to be construed as Jennings not taking responsibility. Moreover, there was other evidence from which the court could conclude that Jennings was not taking responsibility for his actions. In the PSR, the probation officer noted,

> [Jennings] said regarding the present offense, "I'm not gonna say I'm completely innocent. It was an unfortunate situation. DHHS had concerns, so I suggested the protection order. She came to get me, I shouldn't have been in Lincoln. *She kind of got irrational*, I shouldn't have been here. I love her, she loves me. *I feel like she had a motive*. I don't expect anyone to understand the situation. I shouldn't have been here. She came, picked me up, we had sex. I didn't want to be in a relationship, she didn't like the idea. I was just happy to be out. It just didn't go in my favor. *I'm not the monster I'm being made out to be*. I don't blame her for doing what she did. She didn't have intentions of me going to jail."

(Emphasis supplied.) In the "procriminal attitude/orientation" section of the PSR, the probation officer stated:

> When asked his thoughts and feelings about the arrest in the present offense, Mr. Jennings said, "I feel like it's an unfortunate situation. In all honesty I've asked God to get me out of this situation. I feel hurt about this. *I'm trying to take the fall*."
> *The defendant appears to be taking little to no responsibility for the present offense. He did appear to be engaging in minimization or denial related to his involvement in the present offense by stating*, "The police didn't give me a chance. They kind of scared her into this."

(Emphasis supplied.) And in his own statements to the district court at sentencing, Jennings stated:

> I understand -- you know -- some of my actions wasn't acceptable and some of my behaviors wasn't acceptable and that I should be speaking to her. If I ain't going on about my life -- I just want everything to be taken into account that I really -- I'm really -- I understand I did wrong. I understand I did wrong, but I don't feel like I'm the monster I'm being made out to be, at the same time.

Because I -- *two wrongs don't make a right*. And that's why I shouldn't have did what I was doing, but -- I'm not trying to put -- put the blame on nobody else. I understand that my actions are what caused me to be placed in here, but *I don't completely agree with everything I'm actually being placed on -- or I just want to -- I just took the plea so I can get on with my life.*

(Emphasis supplied.)

When the district court addressed Jennings at sentencing, it noted Jennings' previous assaults of the same victim, the protection order that was in place when the current offenses were committed, and the fact that Jennings was on probation for assault at the time of the current offenses. The court stated, "[T]he only way I can protect [M.S.] from your wrath . . . it would appear, is to incarcerate you" for "the maximum sentence."

Based on the foregoing, Jennings cannot show he was prejudiced by trial counsel's use of statements from the guardian ad litem report and court report at sentencing. This claim of ineffective assistance of trial counsel fails.

### (e) Victim's Statement

Jennings claims that his trial counsel was ineffective during the sentencing hearing because counsel offered the victim's statement to the court for review prior to the sentencing hearing, inciting anger towards Jennings. Jennings argues that trial counsel offered M.S.' recorded statements, the contents of which would only prejudice Jennings because M.S. is "heard crying and clearly upset" and "[y]ou can also hear the child crying in the background." He acknowledges counsel's attempt to point out that the officer was "putting words into [M.S.'] mouth." Brief for appellant at 23. Jennings also acknowledges that trial counsel's discussion of a visitation worker was an "appear[ant] attempt to let the Court know that had Mr. Jennings actually forced himself into the home or had [M.S.] been scared, then [M.S.] had the opportunity to report her concern about [Jennings'] presence at that time." *Id*. Jennings contends that a letter or affidavit from the visitation worker could have provided the same information. He claims that if the court had not heard the audio statement, he would have received a lesser sentence.

Although the district court stated it had listened to the audio, it noted many factors it considered when discussing its reasoning for the sentence. For instance, the court stated that it had reviewed the PSR and it had "seen the pictures." The court also noted Jennings' previous assaults of the same victim, the protection order that was in place when the current offenses were committed, and the fact that Jennings was on probation for assault at the time of the current offenses. The court found that the protection order and probation "meant nothing" to Jennings as evidenced by his actions. The court found that the only way it could protect M.S. from Jennings was to incarcerate him for "the maximum sentence." As noted by the State, "[t]here is no indication that but for the audio the district court would have imposed a lesser sentence." Brief for appellee at 12. Accordingly, Jennings cannot show prejudice and this claim of ineffective assistance of trial counsel fails.

## VI. CONCLUSION

For the reasons stated above, we affirm Jennings' sentences. The record is also sufficient to review all of Jennings' claims of ineffective assistance of trial counsel, and we conclude that all claims fail.

AFFIRMED.